UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA HECKMAN NABERHAUS,

       Plaintiff,

v.                                              Case No.  8:20-cv-2190-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

       Defendant.

_____/

### ORDER

      Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

### I.      Procedural Background

      Plaintiff filed an application for a period of disability and DIB (Tr. 217).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 133, 140).  Plaintiff then requested an administrative hearing (Tr. 146).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 45–71).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and

_____

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

accordingly denied Plaintiff's claims for benefits (Tr. 29–39).   Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 2). Plaintiff then timely filed a complaint with this Court (Doc. 1).   The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1967, claimed disability beginning July 19, 2017 (Tr. 229).   Plaintiff obtained a high school diploma (Tr. 234).   Plaintiff's past relevant work experience included work as a sales clerk, a resource teacher, and a merchandise displayer (Tr. 67, 235).   Plaintiff alleged disability due to shoulder pain, anxiety, seizures, muscle spasms, back pain, neuropathy on both legs, no feeling from knee down, stenosis, and cervical, thoracic, lumbar pain. (Tr. 233).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018 and had not engaged in substantial gainful activity since July 19, 2017, the alleged onset date (Tr. 31).   After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: status post right shoulder rotator cuff repair, degenerative disc disease, seizure disorder, fibromyalgia, unspecified bipolar and related disorder, and adjustment disorder with mixed anxiety and depressed mood (Tr. 31). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 31–32).   The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light

work as defined in 20 C.F.R. § 404.1567(b) with additional limitations (Tr. 33).[2]   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 37).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform any past relevant work (Tr. 37).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a small parts assembler, electronics worker, and laundry folder (Tr. 38).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 39).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or

---

[2] The ALJ further found that "[f]unction by function, the claimant remained able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in a workday; and sit six hours in a workday with normal breaks.  She could never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She required the need to avoid concentrated exposure to noise, vibration, extreme cold and pulmonary irritants such as odors, fumes, dust, and gases. She could frequently reach overhead.  She could understand, remember, carry out, and perform simple, routine tasks and instructions." (Tr. 33–34).

which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff argues here that the ALJ erred by (1) rejecting the opinion of Dr. Martinez, Plaintiff's long-time treating neurologist; (2) finding that Plaintiff could perform light work

5

because administrative res judicata barred such a finding; (3) finding that Plaintiff could perform light work because substantial evidence does not support such a finding; (4) failing to consider all medical opinion; (5) failing to consider all of Plaintiff's impairments; and (6) failing to properly evaluate Plaintiff's fibromyalgia.  For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. Treating Physician

Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Robert Martinez, M.D., Plaintiff's long-time treating neurologist.  Specifically, Plaintiff argues that this finding does not comply with the treating physician rule, and even if the treating physician rule does not apply, this finding is not supported by substantial evidence.

Before March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence.  *See* 20 C.F.R. § 404.1527(c).  Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim in April 2018 and alleged disability beginning July 19, 2017 (*see* Tr. 29).  As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently

articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a).  As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).  But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent

a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions.  As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[3]  20 C.F.R. § 404.1520c(b)(2).  And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source.  *See* 20 C.F.R. § 404.1520c(b)(1).

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue.  *See* 20 C.F.R. § 404.1520c(b)(3).

But whether these new regulations eliminate the judicially-created treating physician rule – a longstanding requirement in this Circuit, *see Winschel*, 631 F.3d at 1179 – is an open question. *See Beasley v. Comm'r of Soc. Sec.*, No. 2:20-cv-445-JLB-MRM, 2021 WL 4059895, at * 3-4 (M.D. Fla. Sept. 7, 2021). District courts have diverged in their approaches. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *5 (M.D. Fla. Aug. 5, 2021) (collecting cases and applying good cause standard "in the absence of binding or persuasive authority to the contrary" but noting it was non-issue – under both standards, ALJ's opinion was substantially supported)[4], *with Miller v. Kijakazi*, No. 4:20-cv-656-GMB, 2021 WL 4190632 (N.D. Ala. Sept. 14, 2021) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984), and finding treating physician rule inapplicable; plaintiff did not cite Eleventh Circuit case stating the Act mandates it and did not argue the new regulations are arbitrary, capricious, or otherwise invalid), *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217-EPG, 2021 WL 1721692 (E.D. Cal. Apr. 30, 2021) (finding new regulations entitled to *Chevron* deference; treating physician rule yields to new regulations because it conflicts with them), *Wiginton v. Comm'r of Soc. Sec.*, 3:20-cv-5387-LC/MJF, 2021 WL 3684264 (N.D. Fla. Aug. 3, 2021) (applying

---

[4] In finding the treating physician rule still applies, the *Bevis* court cited *Simon v. Comm'r of Soc. Sec.*, 1 F.4th 908, 912 n.4 (11th Cir. 2021) ("*Simon I*"), a July 9, 2021 decision the Eleventh Circuit withdrew on rehearing on August 12, 2021, and substituted with *Simon*, 7 F.4th 1094 (11th Cir. 2021) ("*Simon II*"), seven days after *Bevis* was decided. In a *Simon I* footnote, the Eleventh Circuit stated that the length of a claimant's treating relationship with her doctor was still an important factor to consider under the new regulations. 1 F.4th at 914 n. 4; *see also Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562 (M.D. Fla. July 12, 2021) (citing *Simon I* and emphasizing that under new regulations, length of treating relationship must still be considered). That footnote was *dicta*, however, as *Simon I* and *II* were decided under the old regulations. Interestingly, *Simon II* omits the *Simon I* footnote.

new regulations without discussing whether Eleventh Circuit precedent regarding the treating physician rule applies), *and Devra B.B. v. Comm'r of Soc. Sec.*, No. 6:20-cv-643(BKS), 2021 WL 4168529 (N.D.N.Y. Sept. 14, 2021) (rejecting Plaintiff's argument that the new regulations conflict with the treating physician rule and are therefore invalid).

The Eleventh Circuit has not spoken directly on the issue in a published opinion. *See Simon* II, 7 F.4th at 1104, n.4 ("[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). But in a recent unpublished opinion, *Marilyn Matos v. Commissioner of Social Security*, No. 21-11764, 2022 WL 97144, at * 4 (11th Cir. Jan. 10, 2022), the Eleventh Circuit found that the ALJ's assessment of a treating source's medical opinion was legally sufficient where the ALJ only considered the medical opinion's supportability and consistency "in accordance with the SSA's new regulatory scheme." *Id.* The *Matos* court stated that the new regulations "no longer require[ ] the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Id.* (emphasis added).

Here, Plaintiff argues that, because the Eleventh Circuit's jurisprudence regarding the treating physician rule developed before the SSA codified the treating physician rule, the SSA's revocation of the rule has no impact on the judicially developed doctrine (*See* Doc. 24, p. 22 ("[The Eleventh Circuit] did not depend on the agency's treating physician rule in its development, and it cannot be discarded now by the revocation of the agency's

treating physician rule.")).  In response, the Commissioner argues that courts defer to new regulations, even where those new regulations conflict with prior judicial precedent.

Plaintiff cites no support for her argument that the treating physician rule survives because it was developed before the agency codified the original treating physician rule. Indeed, the United States Supreme Court has clearly and unambiguously stated that this is not the case:

> A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion. This principle follows from *Chevron* itself. [. . .] Yet allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute, as the Court of Appeals assumed it could, would allow a court's interpretation to override an agency's. *Chevron*'s premise is that it is for agencies, not courts, to fill statutory gaps. The better rule is to hold judicial interpretations contained in precedents to the same demanding Chevron step one standard that applies if the court is reviewing the agency's construction on a blank slate: Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.
>
> A contrary rule would produce anomalous results. It would mean that whether an agency's interpretation of an ambiguous statute is entitled to *Chevron* deference would turn on the order in which the interpretations issue: If the court's construction came first, its construction would prevail, whereas if the agency's came first, the agency's construction would command *Chevron* deference. Yet whether Congress has delegated to an agency the authority to interpret a statute does not depend on the order in which the judicial and administrative constructions occur.

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) (citations omitted); *see also Satellite Broadcasting & Commc'ns Ass'n of Am. v. Oman*, 17 F.3d 344, 348 n.8 (11th Cir. 1994) ("New regulations at variance with prior judicial precedents

are upheld unless they exceed the Secretary's authority or are arbitrary and capricious.") (quotations and citations omitted); *Cf. id.* at 348 ("A contrary result illogically would wed this circuit to [its prior decision], while all other circuits and the Supreme Court would be bound under *Chevron* to defer to the [agency] rule. Moreover, it would create a rush to the courthouse among parties wishing to litigate a statute's meaning before an agency has exercised its broad 'knowledge respecting the matters subjected to agency regulations.'") (quoting *Chevron*, 467 U.S. at 844–45).

Plaintiff does not argue that that the new regulations are arbitrary or capricious, or that the agency exceeded its authority in promulgating the regulations. Considering this and *Matos*, the Court finds that the ALJ was not required to demonstrate good cause to find Plaintiff's treating source opinions unpersuasive. Instead, the ALJ, in accordance with 20 C.F.R. § 404.1520c(c), must consider the persuasiveness of Plaintiff's medical opinions and evaluate them primarily based on supportability and consistency.

Dr. Martinez began treating Plaintiff in May 2014 (Tr. 491). Dr. Martinez's neurological impression of Plaintiff included the following: severe Meniere's vertigo with focal seizure Meniere's syndrome; bilateral shoulder issues with rotator cuff on the right; chronic severe cervical, thoracic, and lumbosacral strain with palpable fibromyositis; chronic cephalalgia; chronic insomnia secondary to pain syndrome; chronic pain syndrome; probable cervical, thoracic, and lumbar herniated nucleus pulposis; and probable L4-5, L5-S1 herniated disk and probable cervical herniated disk (Tr. 497). He then opined that Plaintiff "is 100% permanently, totally disabled, unable to work, function, or compete in a competitive job environment for the rest of her life" (*Id.*). He

further elaborated his opinion that Plaintiff should not do any lifting, bending, or straining of any kind (Tr. 498).  In June 2014, Dr. Martinez wrote a letter stating that Plaintiff cannot sit for long periods of time, do any lifting, do any bending, do any straining, and periodically needs bed rest (Tr. 486).

After this initial visit, he did not see Plaintiff again until June 2016 (Tr. 479).  Dr. Martinez's neurological impression from this visit was nearly identical to his 2014 neurological impression (Tr. 483–84).[5]  He then again opined that "there is no doubt that this patient is 100% permanently, totally disabled, unable to work, function, or compete in a competitive job environment for the rest of her life" (*Id.*).  He further stated his opinion that Plaintiff should not do any lifting, bending, or straining of any kind (Tr. 484).  Dr. Martinez then wrote another letter on Plaintiff's behalf and completed a physical RFC questionnaire for Plaintiff in July 2016 (Tr. 478, 487–90).  The letter restated his previous opinion that Plaintiff cannot sit for long periods of time, do any lifting, do any bending, do any straining, and periodically needs bed rest (Tr. 478).  The RFC questionnaire stated that Plaintiff could walk less than one block, sit for fifteen minutes, and stand for ten minutes; she could sit, stand, and walk less than two hours out of an eight-hour workday; she could never twist, stoop, crouch, climb ladders, or climb stairs; and she could use her

---

[5] At this visit, he also noted bilateral plantar fasciitis with tarsal tunnel syndrome.  In addition—instead of probable L4-5, L5-S1 herniated disk and probable cervical herniated disk—he noted C2-3 right lateral stenosis, C3-4 bulge, C4-5 hypertrophic spurring with bulging, C5-6 bulging, C6-7 hypertrophic spurring with bulging; scattered degenerative disease throughout the lumbar spine, L4-5 bulge, dessication, annular tear with L5-S1 bulging with left central focal bulge and some degenerative changes with narrowing throughout the canal (Tr. 483–84).

hands for reaching, grasping, turning, and twisting objects and fine manipulation only 5%

of the day (Tr. 487–90).

Plaintiff saw Dr. Martinez for a third and final examination in September 2019,

after which he wrote another letter on Plaintiff's behalf (Tr. 468–77).[6] At this visit, Dr.

Martinez's neurological impression was nearly identical to his 2016 neurological

impression.[7]  Dr. Martinez's letter then stated that Plaintiff's primary concern for this visit

was her advancement of her fibromyositis and fibromyalgia.  He further stated that her

restrictions are noted on his 2016 RFC questionnaire and her restrictions remain

unchanged (*Id.*).

The ALJ said the following regarding Dr. Martinez's treatment of Plaintiff:

> After the claimant's insured status expired, in September of 2019, Robert
> Martinez, M.D., issued a report detailing the claimant's medical history of
> Meniere's disease with focal seizures, anxiety disorder, peripheral
> neuropathy, and degenerative spinal issue since 1986, plantar fasciitis since
> 2004, bilateral shoulder issues and tarsal tunnel syndrome since 2009, and
> fibromyalgia/fibromyositis since 2014. Dr. Martinez reported that he found
> 15 positive tender point findings during an examination, which is consistent
> with a diagnosis of fibromyalgia. Dr. Martinez also provided a long
> summary of the claimant's subjective complaints. Objectively, physical
> examination findings showed her blood pressure was within normal limits
> at 120/82. She was alert and fully oriented. There was tenderness, swelling,
> hypertonicity, and nodular spasm noted in the cervical, thoracic, and
> lumbar spines. There was weakness and patch sensory deficits in the upper
> and lower extremities noted. There were 19 positive trigger point findings.
> Ankle reflexes were absent and there was glove stocking sensory loss in both

---

[6] Accordingly, two of Plaintiff's three visits to Dr. Martinez occurred before her alleged
onset date, during a period of time in which Plaintiff's alleged disability was already
adjudicated.  Plaintiff's third visit to Dr. Martinez occurred after Plaintiff's insured status
had expired.

[7] At this visit, he additionally noted that Plaintiff had chronic fibromyalgia and
fibromyositis as well as chronic fatigue syndrome (Tr. 476).

legs and C6 distribution sensory loss bilaterally. She had an antalgic gait. Handgrip was 4/5. (Exhibit B18F, B19F)

The undersigned is not persuaded by the conclusory statements of Dr. Martinez. Overall, the reports from Dr. Martinez starkly contrasts with the other medical opinions of record and with their clinical findings. Moreover, Dr. Martinez's assessment is not supported by any of the current medical evidence of record. Dr. Martinez has reported the claimant has lower extremity weakness, but he failed to grade it. He uses language to portray chronic cervical and lumbar pathology citing to a June of 2014 MRI in his report. However, as discussed above, the actual MRI report findings described the pathology as no more than mild or unremarkable. Dr. Martinez also reported that the claimant ambulates with an antalgic gait, but both the physical and psychological consultative examiners described the claimant's gait as normal. Considering the evidence as a whole, the undersigned is not persuaded by opinion evidence from Dr. Martinez.

(Tr. 35–36). Here, the ALJ's consideration of Dr. Martinez's opinions tracks the new regulations' requirements in that the ALJ discusses both supportability and consistency. Indeed, the Court finds that the ALJ's stated reasons for finding a lack of supportability and consistency are supported by substantial evidence.

With respect to the supportability factor, the ALJ noted that Dr. Martinez's findings were conclusory. For example, the ALJ referenced Dr. Martinez's 2016 RFC questionnaire, which listed a 2014 MRI as the sole "clinical finding" in support of his opinion. The ALJ then explained that the 2014 MRI "described the pathology as no more than mild or unremarkable" (Tr. 36). As an additional example, the ALJ explained that Dr. Martinez reported that Plaintiff had lower extremity weakness, but he failed to grade it. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and **supporting explanations** presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be.") (emphasis added).

15

With respect to consistency, the ALJ stated that Dr. Martinez's opinions were inconsistent with the clinical findings and other medical opinions of record. By way of example, the ALJ cited to Dr. Martinez's finding that Plaintiff's gait was antalgic, while two consultative examiners each found Plaintiff's gait to be normal. In addition, The ALJ was persuaded by the opinion of Dr. Thomas Lawhorn, M.D., the state agency medical consultant who found that Plaintiff was capable of performing light work (Tr. 35, 123–26). Clearly, this opinion is inconsistent with Dr. Martinez's opinion that Plaintiff cannot perform any work.

Plaintiff argues that Dr. Martinez's opinions are supported by his own examinations and have been consistent throughout his treatment of Plaintiff. Plaintiff also argues that Dr. Martinez's opinions are consistent with those of Dr. Mark A. Frankle, M.D., an orthopedic surgeon who treated Plaintiff in 2012 (Tr. 364), and Cecil Willaford, DC, a chiropractor who treated Plaintiff in 2014 (Tr. 433). As an initial matter, the Court notes that Dr. Frankle and Dr. Willaford both treated Plaintiff at least three years before her alleged onset date. Regardless, Plaintiff's argument is, in essence, that there is evidence in the record that *could* support an alternative conclusion that Dr. Martinez's opinion is persuasive. This is outside of the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' . . . .") (alterations in original); *cf. Fritts v. Saul*, No. 1:20-00064-N, 2021

16

WL 1183807, at *10 (S.D. Ala. Mar. 29, 2021) ("[T]he fact that Fritts can cite to some evidence cutting against the ALJ's creditability determination does not warrant reversal, as an ALJ's factual determinations, if supported by substantial evidence, must be upheld even if the evidence preponderates against them.").  On this record, the ALJ did not err in finding Dr. Martinez's opinions unpersuasive.

### B.  Administrative Res Judicata and Law of the Case

Plaintiff next argues that the doctrines of either administrative res judicata or law of the case preclude the ALJ's determination that Plaintiff is not disabled.  Specifically, Plaintiff argues that, because she had a previous application for disability benefits that resulted in the ALJ finding that Plaintiff was limited to a less than full range of sedentary work, the ALJ in this case could not find Plaintiff capable of performing light work (Doc. 24, pp. 39–43).  In response, the Commissioner argues that res judicata does not apply because Plaintiff's previous disability determination did not involve the same facts and issues.  Specifically, the Commissioner asserts that res judicata does not apply because the prior decision adjudicated a different time period, from May 2, 2009 through December 15, 2016 (Doc. 24, pp. 43–45).  For the reasons explained below, the Court agrees with the Commissioner.

"Administrative res judicata applies when an agency has made a previous determination or decision … about [a claimant's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision has become final by either administrative or judicial action."  *Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886, 888 (11th Cir. 2020) (citations and quotations omitted) (alterations in original).  Accordingly,

the question before this Court is whether the previous determination that Plaintiff was limited to a reduced range of sedentary work is the "same fact" and "same issue" that was before the ALJ in Plaintiff's disability claim for a different and later time period. *See id.*

While the Eleventh Circuit has not addressed this issue in a published opinion, there are numerous unpublished decisions holding that administrative res judicata does not apply where a previous disability determination adjudicated a different time period. *See, e.g.*, *Torres*, 819 F. App'x at 888 ("Any earlier proceeding that found or rejected the onset of disability could rarely, if ever, have actually litigated and resolved whether a person was disabled at some later date.") (quotations and citations omitted); *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 844 (11th Cir. 2014) ("The proceeding at issue here did not address this time period, and the prior decision did not finally adjudicate any issues or facts that were raised in this proceeding. Under such circumstances, administrative res judicata does not apply."); *Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009) ("Because the factual time period for [the claimant]'s current application is different from her previous application, administrative res judicata does not apply.") (alterations in original); *see also Diaz v. Comm'r of Soc. Sec.*, No. 8:18-cv-2320-T-JSS, 2020 WL 614643, at *3 (M.D. Fla. Feb. 10, 2020) (collecting cases).[8]

Plaintiff, acknowledging that administrative res judicata cannot apply to determinations from different time periods, argues that the "law of the case" doctrine steps

---

[8] Indeed, had this case involved the same issues and same facts as the previous application, the ALJ would have been permitted to dismiss Plaintiff's second request for relief on the basis of administrative res judicata. 20 C.F.R. § 404.957(c)(1); *see also Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985).

in to preclude the ALJ's RFC determination.  This argument is equally unavailing.  The Commissioner correctly points out that this doctrine applies to a rule of law enunciated by a federal court.  Further, this doctrine also applies to proceedings in the same case.  *See, e.g.*, *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (stating that the doctrine of "law of the case" is a "rule of practice under which a rule of law enunciated by a federal court . . . establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case") (quotations and citations omitted); *cf. This That & The Other Gift & Tobacco, Inc. v. Cobb Cty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) ("Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") (quotations and citations omitted).

For these reasons, neither administrative res judicata nor the law of the case apply to preclude the ALJ's RFC determination in this proceeding.  Accordingly, the ALJ's decision will not be reversed on this basis.

### C. RFC

Plaintiff next argues that, even if administrative res judicata and the law-of-the-case doctrine do not preclude the ALJ's RFC determination, the RFC determination cannot be upheld because it is not supported by substantial evidence.  In support of this argument, Plaintiff states that "[i]t is simply impossible to believe that Ms. Naberhaus' conditions improved between her 2016 determination to the point that she could do light work" (Doc. 24, p. 46).  In essence, Plaintiff again attempts to afford preclusive effect to the previous

ALJ's RFC determination, even though that determination involved different facts and different issues than what was before the ALJ in this proceeding.   In response, the Commissioner states that "neither the previous ALJ's RFC finding nor medical improvement are relevant" because "[t]he only question is whether substantial evidence supports the ALJ's RFC finding for a range of light work" (Doc. 24, p. 47).

Though at first glance this appears to be a re-hashing of the previous argument, it requires a slightly different analysis—namely, whether *issue* preclusion applies to require the ALJ to consider that Plaintiff was only capable of sedentary work as of December 12, 2016, so that there necessarily has to be evidence showing improvement or mitigation of symptoms since that date for there to be substantial evidence supporting the ALJ's finding that Plaintiff was capable of light work.   *Cf. Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998) ("What is true is that under the collateral estoppel branch of res judicata, the judgment denying the earlier claim may bar the relitigation of issues essential to the second claim as well.").   Indeed, decisions issued in other circuits seem to support such a conclusion.   *See, e.g.*, *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987) (stating that "principles of finality and fundamental fairness . . . indicate that the Secretary must shoulder the burden of demonstrating that the claimant's condition had improved sufficiently to indicate that the claimant was capable of performing medium work" where decision issued two weeks before claimant became fifty-five found claimant limited to light work); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.").

After these decisions were issued, however, the SSA issued various Acquiescence Rulings ("AR") clarifying SSA policy with respect to this issue. *See, e.g.*, AR 98-4(6), 63 Fed. Reg. 29,771,29,773 (June 1, 1998) ("Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period."); AR 97-4(9), 62 Fed. Reg. 64,038,64,039 (Dec. 3, 1997) ("[W]hen adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period. **SSA does not adopt findings from the final determination or decision on the prior disability claim in determining whether the claimant is disabled with respect to the unadjudicated period**.") (emphasis added); *see also Randolph v. Astrue*, 291 F. App'x 979, 981 (11th Cir. 2008) (quoting AR 97-4(9)).

Albeit in unpublished decisions, the Eleventh Circuit has consistently held that collateral estoppel principles do not require the ALJ to find improvement from a claimant's previous condition. *See, e.g.*, *McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73 (11th Cir. 2010) ("Because McKinzie's instant application concerned an unadjudicated time period, the ALJ did not err in declining to give preclusive effect or defer to a prior finding that McKinzie could not use her arms or hands repetitively."). The Eleventh Circuit's decision in *Griffin v. Commissioner of Social Security*, 560 F. App'x 837 (11th Cir. 2014) is instructive. In *Griffin*, the claimant had previously filed an application for disability that was denied, with the ALJ finding that the claimant had the RFC to perform a significant range of sedentary work. 560 F. App'x at 840. In his subsequent application

for disability, the ALJ found that the claimant could perform a full range of light work. *Id.* On appeal, the claimant contended that administrative res judicata required the ALJ to give preclusive effect to his previous RFC assessment. *Id.* at 844. The Eleventh Circuit rejected this argument, stating that because the proceedings addressed different time periods, the prior decision did not finally adjudicate any issues or facts that were raised in the subsequent proceedings. *Id.* Although the Court was addressing a res judicata argument, the analysis clearly establishes that an ALJ is not bound by a previous ALJ's findings. *See also Diaz*, 2020 WL 614643, at *4 ("Because the ALJ's disability determination in the instant case was based on an unadjudicated period of time, the ALJ was not bound by res judicata principles and did not err in failing to consider the findings of the prior ALJ decision or in failing to defer to the previous RFC findings.").

Accordingly, considering that the ALJ was not bound in any way by the determinations of the previous ALJ, the Commissioner's assertion that the "only question is whether substantial evidence supports the ALJ's RFC finding for a range of light work" is correct. The Court finds that there is.

### D. Consideration of Medical Source Opinions

Plaintiff next argues that the ALJ erred because he failed to consider all medical opinions and explain why he did not adopt opinions conflicting with his RFC finding as required by Social Security Ruling ("SSR") 96-8p. SSR 96-8p provides that the RFC assessment must "consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Specifically, Plaintiff argues that the ALJ's ruling runs afoul of SSR 96-8p because the ALJ failed to evaluate the opinion of Dr. Mark A. Frankle, M.D., Plaintiff's treating orthopedic surgeon, that she could do no lifting, pushing, pulling or over-head reaching greater than two pounds (*See* Tr. 364, 418). In response, the Commissioner argues that the opinion of Dr. Frankle is not relevant because the opinion was given five years before Plaintiff's alleged onset date (*Id.*).

Plaintiff suggests—without citing any authority—that the ALJ should have considered the opinion of her orthopedic surgeon because she lacked funds to seek current medical treatment and her condition was degenerative (and was thus not going to improve). Indeed, some cases suggest that pre-onset evidence is of little relevance and some cases suggest the opposite. *Compare Carmickle v. Astrue*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.") *with Hamlin v. Barnhart*, 365 F.3d 1208, 1222 n.15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of Mr. Hamlin's case record, and should have been considered by the ALJ."); *see also Groves*, 148 F.3d at 810–11 (stating that "especially when the disabling condition is progressive," there is no "absolute bar to the admission in the second proceeding of evidence that had been introduced in the prior proceeding yet had not persuaded the agency to award benefits").

Courts in the Eleventh Circuit, however, tend to hold that pre-onset medical evidence is of limited relevance. *See, e.g.*, *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018) (stating that medical opinions were of limited relevance because

they predated claimant's alleged disability date); *Colbert v. Comm'r of Soc. Sec.*, No. 6:19-cv-2176-LRH, 2021 WL 1103692, at *7 (M.D. Fla. Mar. 23, 2021) (failure to mention or weigh physician's report that pre-dated onset date "did not result in error"); *Logan v. Comm'r of Soc. Sec.*, No. 3:18-cv-196-J-PDB, 2019 WL 1417450, at *3 (M.D. Fla. Mar. 29, 2019) (stating that, even assuming the ALJ erred in failing to consider certain medical opinions, the error was harmless where the doctors "provided the opinions approximately six years or more before the alleged onset date . . . , making the opinions too temporally remote to relate to impairments and limitations [the claimant] had after [the alleged onset date]"); *Potter v. Colvin*, No. 8:12-CV-1031-T-17TGW, 2013 WL 1347282, at *3 (M.D. Fla. Feb. 28, 2013) (finding no error where the ALJ failed to discuss or weigh treatment notes predating the alleged onset date by nearly three years because the evidence was "too remote to be relevant to the issue of whether" the claimant was disabled on or after the alleged onset date); *but see Ulee v. Kijakazi*, No. 4:20cv137/EMT, 2021 WL 4480620, at *4 n.6 (N.D. Fla. Sept. 30, 2021) ("While it is true in some cases records predating the alleged disability onset date are not relevant to the ALJ's analysis, in other cases, such records may be.").

Here, the ALJ considered evidence prior to December 12, 2016 "for a historical perspective only" (Tr. 29). Considering that Dr. Frankle's opinion predates Plaintiff's alleged onset date by over five years, and that the ALJ considered Dr. Frankle's opinion for historical context of Plaintiff's condition, the Court finds that the ALJ did not err in failing to assign persuasiveness to this opinion. It is too temporally remote to be relevant to impairments and limitations Plaintiff had after the alleged onset date. Moreover, the

record is clear that the ALJ considered Plaintiff's medical condition as a whole. *See Logan*, 2019 WL 1417450, at *3 ("Even without mention of the outdated opinions, the decision makes clear the ALJ considered Logan's medical condition as a whole.").  Because the ALJ did not err, remand is not warranted on this basis.

### E.  Consideration of Plaintiff's Impairments

Plaintiff next argues that the ALJ erred by failing to consider all of her impairments.  Specifically, she argues that the ALJ failed to consider how her Meniere's disease and her tarsal tunnel syndrome affected her RFC.  In response, the Commissioner argues that the ALJ properly considered all of Plaintiff's impairments.  The Commissioner correctly points out that the ALJ discussed both Plaintiff's Meniere's disease and Plaintiff's tarsal tunnel syndrome in explaining his RFC determination (*See* Tr. 34–35).  For example, the ALJ noted that Plaintiff presented with complaints of Meniere's disease at her June 2018 CE with Dr. Magazine (Tr. 34).  In discussing Plaintiff's pre-onset medical records, the ALJ stated that Plaintiff had a "remote history of Meniere's disease, plantar fasciitis, [and] right tarsal tunnel" (Tr. 35).  The ALJ also discussed Plaintiff's Meniere's disease and tarsal tunnel syndrome in discussing Dr. Martinez's September 2019 report: "After the claimant's insured status expired, in September 2019, Robert Martinez, M.D., issued a report detailing the claimant's medical history of Meniere's disease with focal seizures, . . . and tarsal tunnel since 2009" (*Id.*).  Accordingly, Plaintiff's

conclusory assertion that the ALJ failed to consider her Meniere's disease and tarsal tunnel syndrome is not supported by the record.[9]

### F.  Fibromyalgia

Finally, Plaintiff argues that the ALJ erred because he did not properly consider the severity and functional limitations of her fibromyalgia.  Specifically, Plaintiff contends that the ALJ failed to comply with SSR 12-2p, which sets forth how to determine whether a person has the medically determinable impairment of fibromyalgia and how to evaluate the severity and functional limitations in a case concerning fibromyalgia.  *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  The Commissioner responds that the ALJ properly evaluated Plaintiff's fibromyalgia along with her other impairments in assessing her RFC.

Fibromyalgia "is 'characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'"  *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015) (quoting SSR 12-2).  The SSA promulgated SSR 12-2p to provide guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how it will evaluate this impairment in a disability claim.  SSR 12-2p, 2012 WL 3104869, at *1.  The ruling directs ALJs to consider fibromyalgia in the five-step sequential evaluation

---

[9] To the extent Plaintiff attempts to argue that a different RFC determination is required because of her Meniere's disease and tarsal tunnel syndrome, such an argument is equally unavailing. *See Thomas v. Comm'r of Soc. Sec.*, No. 3:19-cv-943-J-PDB, 2020 WL 5810234, at *3 (M.D. Fla. Sept. 30, 2020) ("The mere existence of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings.") (quotations and citations omitted); *see also Bullard v. Comm'r of Soc. Sec. Admin.*, No. 8:19-cv-289-T-23MCR, 2020 WL 3668792, at *6 n.10 (M.D. Fla. Feb. 20, 2020) ("[T]he ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the final responsibility for assessing the RFC rests with the ALJ.").

process and instructs them on how to develop evidence and assess the impairment in determining if it is disabling. When making an RFC determination, SSR 12-2p states, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *6. When determining whether a claimant can do any past relevant work or other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to be alert to the possibility that there may be exertional or nonexertional limitations, such as postural or environmental limitations, that may impact the analysis. *Id.* The ruling advises that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms," the SSA will consider all of the record evidence, including the claimant's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms, the nature and frequency of the person's attempts to obtain medical treatment for symptoms, and statements by third parties about the claimant's symptoms. SSR 12-2p, 2012 WL 3104869, at *5.

Of course, a diagnosis of fibromyalgia does not necessarily equate to work-related limitations. *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 988 n.5 (11th Cir. 2015) ("The mere fact that the ALJ determined that Laurey's fibromyalgia was a 'severe impairment,' however, does not mean that the ALJ was required to attribute severe pain to her fibromyalgia."); *Moore*, 405 F.3d at 1213 n.6 (existence of impairments does not reveal extent to which they limit ability to work or undermine ALJ's determination in that

regard); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). And, although Plaintiff testified that her fibromyalgia caused difficulties in digestion, swallowing, concentration, and migraines, she has not identified any evidence showing that her fibromyalgia caused limitations that exceed the limitations set forth in the ALJ's RFC (Tr. 62–63).

The ALJ did not dispute Plaintiff's fibromyalgia diagnosis and concluded it was a severe impairment (Tr. 31). However, the ALJ found that, while the Plaintiff's medically determinable impairments (including fibromyalgia) could reasonably be expected to produce the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 37). In making this determination, the ALJ not only considered the objective medical evidence, but also considered all of the evidence in the case record, as required by SSR 12-2p.

The ALJ thoroughly reviewed the medical evidence but ultimately concluded that Plaintiff's fibromyalgia did not prevent her from performing the RFC as assessed. The analysis shows that the ALJ considered third-party statements and Plaintiff's activities of daily living. For example, the ALJ stated that Plaintiff "admitted to a wide range of independent activities of daily living" at her June 2018 psychological evaluation (Tr. 36, 343). He further elaborated: "In supporting documentation and third party statements, the claimant reportedly was able to perform a wide range of independent activities of daily living, which is not consistent with a totally disabled individual" (Tr. 37). He then

28

emphasized that a "limitation of less than a full range of light level exertion and unskilled work activity is a significant limitation" (Tr. 37).  For these reasons, the court finds that Plaintiff failed to demonstrate that her RFC was not properly assessed under SSR 12-2p. *See Coates v. Colvin*, 2017 WL 695236, at *4–5 (M.D. Fla. Feb. 22, 2017) (finding that claimant failed to show that ALJ did not assess her RFC in accordance with SSR 12-2p when claimant's activities of daily living were inconsistent with her alleged limitations from fibromyalgia).

## V.    Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on this 28th day of March, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

29